IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

RYAN DOUGLAS CLARK,

              Plaintiff,

v.

GRANTS PASS SCHOOL DISTRICT
NO. 7, KIRK T. KOLB, BARRET
SALE,

              Defendants.

Case No. 1:21-cv-00872-CL

FINDINGS AND
RECOMMENDATION

---

CLARKE, Magistrate Judge.

    Plaintiff, Ryan Douglas Clark ("Plaintiff"), brings this action against his employer for alleged violations of his civil rights and intentional infliction of emotional distress. This case comes before the Court on Defendants' Motion for Summary Judgment. Oral argument was heard on April 5, 2022. For the reasons set forth below, the Court recommends that Defendants' Motion for Summary Judgment (#17) be GRANTED.

Page 1 – FINDINGS AND RECOMMENDATION

## BACKGROUND

Plaintiff teaches electives at South Middle School for defendant Grants Pass School District No. 7 (the "District"). Plaintiff is a devout Christian and spends time gathering with other devout Christians as a group called the "Rogue Valley Saltshakers" ("RVS"). RVS typically congregates at abortion clinics and gay pride events throughout the local area to share their religious beliefs. Plaintiff believes that the Bible calls him to "go and make disciples of all nations," and that a necessary aspect of making disciples is preaching his religious beliefs publicly to people he may not otherwise see at church. Clark Decl. ¶ 8. Plaintiff believes that he must "mak[e] others aware of what the Bible declares to be a sin and warn[] people of sin's eternal consequences (Ezekiel 33:8)—namely, going to hell, a place of eternal fiery torment (Revelation 14:11) where those who reject the gospel will experience 'weeping and gnashing of teeth' (Matthew 8:12; Luke 13:28)." Clark Decl. ¶¶ 8, 9. Plaintiff's messages have reflected traditional and controversial views on marriage, gender, and sexuality such that "(1) marriage is exclusively between a man and a woman, (2) God created all people male or female, and (3) any sexual conduct outside marriage, whether between two persons of opposite sexes or the same sex, constitutes sin." Clark Decl. ¶ 10.

In early 2021, other teachers (who are also District parents) made complaints about Plaintiff's activities with RVS. Two colleagues of Plaintiff complained that they do not feel safe being in the same room as Plaintiff, or even working in the same building, because of the views he has expressed. The complaints mostly centered on whether Plaintiff's off-campus activities were causing or had the potential to cause a disruption in the classroom. Plaintiff's direct supervisor, Principal Barrett Sale ("Defendant Sale"), investigated the complaints and concluded that Plaintiff had not violated any policies. On February 26, 2021, Defendant Sale issued a letter

to Plaintiff regarding the investigation and findings. The letter detailed who was interviewed within the school district and what communication was exchanged related to the investigation. The letter concluded that Plaintiff had not violated any policies or expectations, but noted that Defendant Sale was concerned about how students and teachers may perceive Plaintiff if he continues to be involved with RVS, noting,

> There is growing concern that Mr. Sale shared with Mr. Clark during the investigation process that there are at least two staff members that are afraid to be in a room with him. . . . [T]here are perception of him that he may be an unsafe person due to his involvement with certain community groups that are seen within the community as "hate groups" because of their use of fear tactics and their harassment and intimidation of people. Although Mr. Clark has not directly been engaged with this since his previous meeting with Director Huber-Kantola, his continued involvement with community groups and/or individuals that belong to these groups leads others to believe that he may be an unsafe person because of who he is affiliated with.

Complaint, Ex. B at 33.

In the last section of the letter labeled "Recommendations," Defendant Sale wrote that the District will continue to "remind all staff, and Mr. Clark, to adhere to all ODE guidance, School Board Policies, and TSPC Ethical Educator requirements in fulfilling all duties as teachers in District 7." *Id.* at 34. The recommendation section continued with additional reminders to treat all students with respect and dignity and the need to "conduct themselves in a manner both inside and outside of the classroom and school that allows them to meet their professional responsibilities." *Id.* Finally, the letter stated

> Because Mr. Clark is known to be a teacher in the local public schools, he may become the focus of public attention, or at least private communications between parents, community members, etc. if he continues to appear at public venues with others who carry such signs and make statements that LGBTQ2SIA+ individuals will go to [h]ell.
>
> There are First Amendment rights as well as rights under the Oregon Constitution to free speech.

> The District prohibits and may consequence appearing at any school event with such a group, even if Mr. Clark is not holding a sign or shouting out the slogans. The District also prohibits such involvement at any youth gathering within the school district where students are likely to see Mr. Clark associating with groups expressing such opinions.
>
> For social media sites, which are open to the public or a large number of people who may have children in the schools, we direct Mr. Clark not to participate in posting hateful messages about individuals protected by District policies on discrimination.

*Id.*

Plaintiff appealed the letter to District Superintendent Kirk Kolb ("Defendant Kolb"). According to the District, there was nothing to appeal because there was no discipline, but Defendant Kolb agreed to meet with Plaintiff to provide clarification and answer Plaintiff's questions. Following the meeting, Defendant Kolb provided a letter to Plaintiff with written answers to Plaintiff's questions. *See* Complaint, Ex. D. The letter provides Plaintiff's questions and Defendant Kolb's responses in bold under each question. Defendant Kolb repeatedly answered that Plaintiff was not prohibited from exercising his first amendment rights, but warned that if off-campus activities resulted in substantial disruption in the classroom—such as students not feeling safe and refusing to have him as a teacher—then it may lead to action by the District, including reassignment. For example, the letter states,

> Is Mr. Clark being directed not to associate or be in proximity of others that are engaging in the activities to which the district objects and/or seeks to prohibit?" **No, this would also be a first amendment right outside of your responsibilities and duties as a school employee, however, should your affiliation or association with such a group result in a "substantial disruption" in the school setting, it may lead to action by the District, including reassignment. Substantial Disruption would include but is not limited to students not feeling safe in the classroom or in your presence while at school.**

Complaint, Ex. D at 39 (bolding in original).

In June 2021, Defendant Kolb withdrew both his written explanation letter and the letter written by Defendant Sale from Plaintiff's employee file. Plaintiff was never placed on administrative leave or lost wages during the time relevant to the Complaint. Plaintiff remains working as a teacher at South Middle School, but claims he is fearful that he will lose his job unless he ceases his evangelism activities or "waters down his message." Plaintiff alleges that he experienced depression due to Defendants' actions. Plaintiff has not received medical treatment or counseling for the alleged depression.

## LEGAL STANDARD

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material of fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Id.* at 250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. *Devereaux*, 263 F.3d at 1076. In assessing whether

a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995).

## DISCUSSION

Plaintiff has brought ten claims against his employer: three claims under 42 U.S.C. § 1983 for violations of his First Amendment rights of speech, religion, and association; three claims under the Oregon Constitution for violations of his rights of speech, religion, and association; one claim for violating federal employment law under Title VII; one claim for violating Oregon employment law; one claim for aiding and abetting discrimination under Oregon law; and one tort claim for intentional infliction of emotional distress. Defendants move for summary judgment on all claims. Plaintiff does not oppose Defendants' motion as it pertains to his prayer for economic damages and declaratory relief. Plaintiff concedes that he has suffered no economic damages. *See* Response at 3 n.1.

**I.    Plaintiff's Section 1983 claims fail as a matter of law.**

Plaintiff's three claims for violations of his First Amendment rights of speech, religion, and association are all evaluated under the same analysis found in *Pickering v. Board of Education*, 391 U.S. 563 (1968). In order to succeed on a First Amendment claim against an employer under Section 1983, a plaintiff must prove (1) that he engaged in constitutionally protected speech or conduct; (2) the defendant took an adverse action against the plaintiff; and (3) the plaintiff's constitutionally protected speech or conduct was a substantial or motivating factor in the adverse employment action. *Id.*; *Hudson v. Craven*, 403 F.3d 691, 695 (9th Cir. 2005). If that showing can be made, the burden then shifts to the employer to show either that the employer's legitimate administrative interests outweigh the employee's First Amendment

rights or that the employer would have reached the same decision even in the absence of the employee's protected conduct. *Thomas v. City of Beaverton,* 379 F.3d 802, 808 (9th Cir. 2004).

First, Plaintiff has failed to show that he suffered an adverse action. Plaintiff was not terminated from his position with the District, he was not put on administrative leave, he was not demoted in position, he did not lose any privileges, he did not lose wages. The only actions taken by the defendants that could be considered adverse were the two letters placed in Plaintiff's employee file by Defendants Sale and Kolb. The Court has reviewed both letters and considered the contents in the light most favorable to Plaintiff and finds that no reasonable juror could find that these letters constitute an adverse employment action. The first letter explains that a complaint was made against Plaintiff by another teacher, an investigation was conducted, and the complaint was found to be unsubstantiated. The letter then gives Plaintiff notice that at least two staff members do not feel safe around him so complaints about his conduct may continue. The letter then provides reminders of rules and policies already in place. The second letter was provided at Plaintiff's request and contains both the questions asked by Plaintiff and Defendant Kolb's answers. The second letter repeatedly affirms that Plaintiff has First Amendment rights to speech, assembly, and religion while also reminding Plaintiff that he has special responsibilities as a public-school teacher. Neither letter imposes discipline or new rules; both letters remind Plaintiff of policies already in place that apply to all District employees. A government employer must be allowed to inform its employees of what behaviors may violate rules and the possible consequences of such violations without running afoul of the First Amendment.

Second, even if the letters at issue were to be considered adverse action, Defendants have legitimate interests in protecting the safety and wellbeing of its students that outweigh Plaintiff's

right to comment on matters of public concern. The government has a heightened interest in regulating the speech and activities of its employees. Restrictions on speech and conduct are scrutinized differently when the government acts as an employer rather than as a sovereign. *Pickering v. Bd. of Educ.*, 391 U.S. at 568. Public employers are allowed to prohibit otherwise protected speech where the interest of the government, as an employer, in promoting the efficiency of the public services it performs through its employees, outweighs the employee's right to comment on matters of public concern. *Pickering*, 391 U.S. at 568. When analyzing whether the government's interests outweigh a plaintiff's right to engage in protected speech, courts "examine disruption resulting both from the act of speaking and from the content of the speech." *Clairmont v. South Mental Health*, 632 F.3d 1091, 1107 (9th Cir. 2011). The government interests "include promoting efficiency and integrity in the discharge of official duties and maintaining proper discipline in the public service." *Id.* Courts also examine whether plaintiff's speech "impeded his ability to perform his job duties." *Id.* Courts also consider the extent that plaintiff's speech interfered with his workplace relationships. *Id.* To prove that an employee's speech interfered with working relationships, the government must show "actual, material and substantial disruption, or reasonable predictions of disruption in the workplace." *Id.* (quoting *Robinson*, 566 F.3d at 824). Courts are more likely to accept a government's prediction of future disruption if some disruption has already occurred. *See e.g., Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454, 477-78 (3d Cir. 2015) (relying on complaints from parents whose children were criticized in teacher's blog with demands for their children to be placed in a different classroom).

Additionally, because public-school teachers occupy a unique and important position in our society, the position of public-school teacher "requires a degree of public trust not found in

Page 8 – FINDINGS AND RECOMMENDATION

many other positions of public employment." *Melzer v. Bd. of the City Sch. Dist. of the City of New York*, 336 F.3d 185, 198 (2d Cir. 2003). A public-school teacher must maintain a classroom that is conducive to learning where the student is comfortable and feels safe when interreacting with the teacher. *See Craig v. Rich Tp. High School Dist.*, 736 F.3d 1110 (7th Cir. 2013). Therefore, courts may also consider the reaction of students and parents to the plaintiff's conduct when applying *Pickering*. *Munroe*, 805 F.3d at 475-76. And if there are material factual disputes when applying *Pickering*, we resolve all factual disputes in favor of the non-moving party, provided that there is evidence that reasonably would support such a finding. *See CarePartners*, 545 F.3d at 875 n.3 (citing *Scott v. Harris*, 550 U.S. 372, 379-80 (2007)).

Here, Plaintiff complains that he was "not free to say, 'You'll burn in hell if you do/don't' (fill in the blank),' as GPSD has deemed such speech 'hateful.'" Response at 6. He complains that he was told he could not "attempt to persuade by invoking feelings of insecurity and fear." *Id.* While the Constitution does afford Plaintiff rights and privileges regarding speech and the practice of religion, it does not afford Plaintiff the right to strike fear into the hearts of the children that he teaches, regardless of what he sincerely believes the Bible tells him to do. The District has the right, if not the duty, to place the safety and wellbeing of its vulnerable underage students above that of its adult employees. It was reasonable for the District to prohibit Plaintiff from telling students that they will burn in hell for engaging in conduct that the Bible labels a sin. It was lawful for the District to inform Plaintiff that he was not permitted to harass or use fear or intimidation tactics towards students, as that is the District's policy for all employees. It was also lawful for the District to provide Plaintiff with notice that discipline was possible if his off-campus activities caused a substantial disruption in the workplace. Disruption to the workplace is a reasonable, non-discriminatory justification for imposing policies that may

Page 9 – FINDINGS AND RECOMMENDATION

limit a public employee's speech or conduct. It was reasonable for the District to rely on the standards set out in *Pickering* and subsequent caselaw when drafting the letters that were placed in Plaintiff's employee file.

Third, the letters simply do not limit Plaintiff in the way he claims. Plaintiff asserts that the letters restricted what he could say, how he could say it, where he could say it, and with whom he could associate. The record does not support these broad assertions. The letter drafted by Defendant Kolb provides the questions that Plaintiff asked during their meeting. Plaintiff asked what signs he could not hold or what pamphlets he could not hand out. Defendant Kolb provided a response in bold underneath Plaintiff's question that clearly explains that holding signs or passing out pamphlets outside the workplace would be activities protect by the First Amendment outside of Plaintiff's responsibilities and duties as a school employee. Following that answer with a warning that the District may have to take action if Plaintiff's activities cause a substantial disturbance in the workplace does not change or invalidate Defendant Kolb's answer. Plaintiff asked whether he was being directed not to associate or be in proximity of others that are using fear or intimidation to persuade. Defendant Kolb wrote "no." Plaintiff asked if he was being directed not to practice his religion in his place of worship or in public. Defendant Kolb wrote "no." Plaintiff asked whether he would be found in violation of District expectations if he held a sign in public away from school property that says "OUR LIES, HATE, THEFT, GREED, LUST, PORN, FORNICATION, LGBTQ, ABORTION, AND ALL OTHER SIN EARN DEATH AND HELL. TRUST JESUS! BE SAVED!" In response, Defendant Kolb wrote "no" and re-iterated that this was protected behavior under the Constitution.

The letters confirm only one restriction: Plaintiff was told that he "should avoid situations where minor students would see him projecting a message that is threatening or hateful toward

LGBTQ+ individuals, either because he is holding a sign himself, or he is standing among a group where others are holding such signs." Complaint, Ex. D. In support of this restriction, Defendant Kolb explained that "[b]ecause young persons are not readily able to disassociate a teacher's public advocacy (by being present in a group advocating against LBGTQ persons) and a teacher's likely conduct toward them at school, it is reasonable for the District to prohibit Mr. Clark's participation in any gatherings at youth events, whether school-related or not, within the geographic boundaries of D7." Complaint, Ex. D. The Court agrees that it was reasonable for the District to prohibit Plaintiff from advocating against LGBTQ+ persons or be part of a group that is advocating against LGBTQ+ persons at youth events within the District boundaries in order to prevent a substantial disturbance in the workplace. The First Amendment does not assure Plaintiff job security if his evangelizing activities cause a substantial disruption in the workplace.

For these reasons, Defendants should be granted summary judgment on Plaintiff's Section 1983 claims.

## II. Defendants Sale and Kolb are entitled to qualified immunity.

In the event that Plaintiff's Section 1983 claims are allowed to proceed, Defendants Kolb and Sale assert that they are entitled to qualified immunity. A defendant is entitled to qualified immunity if his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis requires a court to address two questions: (1) whether the facts alleged or shown by the plaintiff establish a constitutional violation and (2) whether the right at issue was clearly established at the time. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The right must have been clearly established at the time of the defendant's alleged misconduct, so that

reasonable official would have understood that what he or she was doing under the circumstances violated that right. *Wilson v. Layne*, 526 U.S. 603, 615 (1999).

The Supreme Court has repeatedly admonished courts "not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation marks and citation omitted). "The dispositive question is whether the violative nature of particular conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* Even if a right is clearly established, qualified immunity protects an official from reasonable mistakes about the legality of his actions. *Wilkins v. City of Oakland*, 350 F.3d 949, 954-55 (9th Cir. 2003). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231 (internal quotation marks and citation omitted).

This Court has found no constitutional violation, but even if there was, this Court finds that it was reasonable for Defendants Sale and Kolb to think that their conduct was lawful and not in violation of Plaintiff's rights. To determine whether an official violated clearly established law, courts look to cases relevant to the situation the official confronted, mindful that there need not be a case directly on point. *A.K.H. rel. Landeros v. City of Tustin*, 837 F.3d 1005, 1013 (9th Cir. 2016). Plaintiff has cited various cases about the First Amendment to argue that Plaintiff's rights to free speech, freedom of religion, and freedom of association were clearly established. However, the legal rights at issue under the qualified immunity analysis are not the generic rights to free speech or religion, for that is precisely the level of generality that the Supreme Court prohibited. Instead, the issue for the Court to decide is whether the outcome of the *Pickering* balancing test so clearly favored Plaintiff that it would have been unreasonable for

school officials to conclude that their conduct was lawful. *See Brewster v. Bd of Educ. of Lynwood Sch. Dist.*, 149 F.3d 971, 980 (1993) (finding similarly that "[t]he legal right at issue is not the generic right to free speech. Nor is it the right to be free from expression-based retaliatory discipline or discharge. Rather, whether or not Brewster enjoyed a clearly established right to speak 'depends on the sensitive ad hoc balancing that *Pickering* entails.'"). Here, Defendants Sale and Kolb used language directly from the balancing test set out in *Pickering* and supported by subsequent caselaw to inform Plaintiff that there may be consequences if his conduct caused a substantial disturbance in the workplace. It was reasonable for them to rely on this language and use it in their response to the complaints made against Plaintiff. Therefore, this Court finds that Defendants Sale and Kolb are entitled to qualified immunity on Plaintiff's Section 1983 claims.

As a final note on qualified immunity, the Court finds it important to correct Plaintiff's assertion that "the Ninth Circuit has declared that determinations of qualified immunity are inappropriate for summary judgment." Response at 23. This statement is incorrect and not supported by Plaintiff's citation. *See Martinez v. Stanford*, 323 F.3d 1178, 1184-85 (9th Cir. 2003) (reversing the district court's order granting summary judgment on the grounds that there were disputed material facts, not on the grounds that qualified immunity can never be decided on summary judgment). Such an assertion runs afoul of the Supreme Court's clear instruction that the issue of qualified immunity should be resolved at the earliest possible stage in litigation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) ("we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation). Such an assertion is also directly contradicted by the numerous cases where the Ninth Circuit has affirmed a finding of qualified immunity since *Martinez v. Stanford*, as well as the numerous cases in which this very court has decided qualified immunity at the summary judgment stage. *See, e.g., Skoog v.*

Page 13 – FINDINGS AND RECOMMENDATION

*Cnty. of Clackamas*, 469 F.3d 1221, 1229 (9th Cir. 2006) ("We affirm the district court's grant of summary judgment based on qualified immunity on the search and seizure claim"); *Roberts v. Springfield Utility Bd. et. al*, Case No. 6:19-cv01595-MC, Dkt. No. 61 (Order Granting Attorney Defendants' Motion for Summary Judgment); *Leontiev v. Corbett Sch. Dist.*, 333 F. Supp. 3d 1054, 1067 (D. Or. 2018); *McLean v. Pine Eagle Sch. Dist., No. 61*, 194 F. Supp. 3d 1102, 1118 (D. Or. 2016).

### III. The Court finds no *Monell* liability.

For the District to be held liable under Section 1983, Plaintiff must show that a District custom or policy caused the violation of his constitutional rights. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690 (1978) (holding that a municipality is a "person" subject to liability under § 1983 when it causes a constitutional tort through a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers"). The District itself must cause the constitutional deprivation and may not be held vicariously liable for the unconstitutional acts of its employees under a *respondeat superior* theory. *Id.*; *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (requiring "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation"). The Ninth Circuit has held that a plaintiff may establish municipal liability under *Monell* in one of three ways: (1) the government official "committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity," (2) "the individual who committed the constitutional tort was an official with final policy-making authority," or (3) "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (citations omitted).

Here, the Court has found no constitutional violation so the District cannot be held liable under Section 1983. Furthermore, Plaintiff failed to plead a factual basis for *Monell* liability. Plaintiff has not challenged any District policy or rule. In his response brief, Plaintiff points to another lawsuit currently pending against the District—*Damiano v. Grants Pass School District*, Case No. 1:21-cv-00859-CL—to argue that there is a pattern of similar constitutional violations. However, no decision has been reached on the merits in *Damiano*, and the two cases differ factually. Moreover, the *Damiano* plaintiffs applied for a temporary restraining order on the grounds that their First Amendment rights were violated, and their motion was denied. This other pending litigation is insufficient to establish a custom, policy, or practice for the purposes of *Monell* liability.

### IV.    The Court finds no basis to grant relief under the Oregon Constitution.

Plaintiff also brings three claims under the Oregon Constitution for violations of his civil rights. Under these claims, Plaintiff alleges that defendants violated Article I, Sections 2, 3, 8, and 26 of the Oregon Constitution. Section 2 states that "[a]ll men shall be secure in the Natural right, to worship Almighty God according to the dictates of their own consciences." Section 3 states, "No law shall in any case whatever control the free exercise, and enjoyment of religeous [sic] opinions, or interfere with the rights of conscience." Section 8 states, "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right." Section 26 states, "No law shall be passed restraining any of the inhabitants of the State from assembling together in a peaceable manner to consult for their common good."

First, Sections 3, 8, and 26 do not apply to this action because there are no laws or municipal policies at issue. Plaintiff has not challenged any underlying District or Oregon

Department of Education rules or policies. Second, there is no private right of action for damages under the Oregon Constitution. *See Hunter v. City of Eugene*, 309 Or. 298, 304 (1990) (("[P]ersons whose rights are violated by a municipality or its employes [sic] may not bring an action for damages against the municipality or its employes [sic] directly under the constitution."). To the extent that Plaintiff is seeking declaratory or injunctive relief under the Oregon Constitution, there is no guiding caselaw for adverse employment claims under Article I, Section 2 of the Oregon Constitution. Moreover, the Court has found no caselaw that suggests that the Oregon Constitution would more aggressively protect against free-speech or free-religion retaliation claims than the First Amendment. Therefore, the Court finds no basis to grant relief under the Oregon Constitution. Summary judgment for Defendants on the state constitutional claims should be granted.

V.  **Defendants should be granted summary judgment on Plaintiff's employment discrimination claims.**

Plaintiff has also brought two claims for religious discrimination under Title VII and its state law analog, ORS 659A.030(1)(a). Plaintiff alleges that the District engaged in religious discrimination by "threatening to punish Plaintiff with reassignment or dismissal for expressing his biblically-based views on marriage, gender, and sexuality." Complaint ¶ 89, 94. Plaintiff further alleges that he was treated differently than other teachers because the defendants' actions implied that other teachers who do not share Plaintiff's viewpoint have the privilege to express their views without fear of punishment. Complaint ¶ 90.

Both Title VII and ORS 659A.30 claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *Bodett v. Comcox, Inc.*, 336 F.3d 736, 743 (9th Cir. 2004) (describing Title VII framework); *see Dawson v. Entek*, 630 F.3d 928, 935 (9th Cir. 2011) (applying same to ORS 659A.030 claims). Under this framework, plaintiff has the burden of

proving (1) he is a member of a protected class; (2) he was qualified for the position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or that other circumstances surrounding the adverse action give rise to an inference of discrimination. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). If plaintiff meets that burden, then the burden shifts to the District to offer a legitimate non-discriminatory reason for taking the adverse action. *Bodett,* 366 F.3d at 744. Plaintiff may then attempt to show that the given reason is pretextual. *McDonnell Douglas,* 411 U.S. at 804.

Plaintiff has failed to carry his burden under this framework. First, for the same reasons stated above, Plaintiff did not experience an adverse employment action. Second, Plaintiff has not shown that he was treated differently than other teachers in the District. "Other employees are similarly situated to the plaintiff when they have similar jobs and display similar conduct." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1114 (9th Cir. 2011). Comparators must be similarly situated in all "material respects." *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006). Plaintiff has presented no evidence of another teacher engaging in the same or similar conduct and receiving different treatment. Nor has Plaintiff presented evidence that shows other teachers were or would have been treated differently than Plaintiff if they engaged in conduct that caused a substantial disruption in the school setting. Plaintiff asks this Court to infer discrimination based on the language used in the letters written by Defendants Sale and Kolb. The Court has reviewed the letters and has found no such inference of discrimination. Even if the letters did allow for an inference of some level of discrimination, that alone is not enough to satisfy Plaintiff's burden under these claims. Therefore, Defendants should be granted summary judgment on Plaintiff's Title VII and ORS 659A.030 claims.

## VI. Defendants Kolb and Sale should be granted summary judgment on Plaintiff's aiding and abetting claim.

Plaintiff's ninth claim is against Defendants Kolb and Sale for aiding and abetting religious discrimination under state law. Because the Court finds no state law violation, Defendants Kolb and Sale cannot be found liable for aiding and abetting. Additionally, Defendants Kolb and Sale were acting within the course and scope of their employment for a public body. "Under the [Oregon Tort Claims Act], the public body shall be substituted as the only defendant when a tort claim is brought against public officials for actions taken within the scope of their employment." *Carlton v. Marion Cty.*, 2004 WL 1442598, at *5 (D. Or. Feb. 2004) (citing ORS 30.265(1)).

## VII. Defendants should be granted summary judgment on Plaintiff's IIED claim.

Plaintiff's last claim is for intentional infliction of emotional distress ("IIED"). To succeed on a claim for IIED, a plaintiff must show that (1) defendants intended to inflict severe emotional distress, (2) the defendants' acts were the cause of severe emotional distress, and (2) the defendant's acts were an "extraordinary transgression of the bounds of socially tolerable conduct." *Giulio v. BV CenterCal, LLC*, 815 F Supp 2d 1162, 1180 (D. Or. 2011) (citing *Madani v. Kendall Ford, Inc.*, 312 Or 198, 203 (1991)). To establish the necessary element of intent, a plaintiff must prove defendant desired to inflict severe emotional distress, and knew such distress was certain, or substantially certain, to result from the conduct at issue. *Id.* (quoting Restatement (Second) of Torts, § 46, comment i (1965)). The conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*

In the employment context, Oregon courts are reluctant to find conduct extreme or outrageous without a showing of some sort of unwanted physical contact of a violent or sexual

nature, or credible threats of such contact, or the use of derogatory racial, gender, or ethical slurs accompanied by some other aggravating circumstance. *See Clemente v. State*, 227 Or. App. 434, 442-43 (2009). The fact that a supervisor was insensitive, rude, or even mean-spirited is not enough for an IIED claim to be successful. *See Miller v. Deschutes Valley Water Dist.*, 663 F. Supp. 2d 1001, 1009-10 (D. Or. 2009) (surveying employment cases which found that unjustified terminations or reprimands, excessive supervision, and poor performance evaluations, were not sufficiently outrageous to support an IIED claim). The determination of whether the alleged conduct is an extraordinary transgression of the bounds of socially tolerable conduct is a question of law for the court. *Giulio*, 815 F Supp 2d at 1180 (citing *Delaney v. Clifton*, 180 Or App 119, 129 (2002)).

The conduct alleged in his case does not rise to the level of extreme or outrageous as to go beyond the bounds of socially tolerable conduct. Even if Plaintiff found the language in the letters written by Defendants Kolb and Sale to be insulting, that is not enough under Oregon law. Nothing in the record suggests that Defendants Kolb or Sale were acting with the intent to cause Plaintiff severe emotional distress. Nor does the record show that Plaintiff actually suffered severe emotional distress. Plaintiff alleges that Defendants' conduct caused him to be depressed, but he sought no medical treatment or counseling as a result of Defendants' conduct. Therefore, Defendants are also entitled to summary judgment on Plaintiff's IIED claim.

## RECOMMENDATION

For all the reasons provided above, the Court recommends that Defendants' Motion for Summary Judgment (#17) be GRANTED. The motion disposes of all claims. Therefore, judgment should be entered in favor of Defendants.

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is entered. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. See FED. R. CIV. P. 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED this __5__ day of May, 2022.

MARK D. CLARKE
United States Magistrate Judge