Ray D. Hacke, OSB #173647
PACIFIC JUSTICE INSTITUTE
1850 45th Ave. NE, Suite 33
Salem, OR 97305
Phone: (503) 917-4409
Fax: (916) 857-6902
E-mail: rhacke@pji.org

Attorneys for Plaintiff
RYAN DOUGLAS CLARK

UNITED STATES DISTRICT COURT IN AND FOR

THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| RYAN DOUGLAS CLARK, | Case No.: 1:21-CV-00872-CL |
| Plaintiff, | **OBJECTIONS TO FINDINGS AND RECOMMENDATION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | **[ORAL ARGUMENT REQUESTED]** |
| GRANTS PASS SCHOOL DISTRICT NO. 7, A public body; KIRK KOLB; An individual, in his capacity as Superintendent of Grants Pass School District No. 7; BARRET SALE, an individual in his capacity as Principal of South Middle School; and DOES 1 THROUGH 50, Inclusive | |
| Defendants | |

Pursuant to Fed. R. Civ. P. 72(b)(2), for purposes of preserving error for appeal, Plaintiff RYAN DOUGLAS CLARK files the following objections to Magistrate Judge Mark Clarke's Findings and Recommendation (the "Proposed Order," or "F&R" when cited) to award summary judgment to Defendants

GRANTS PASS SCHOOL DISTRICT No. 7 ("GPSD" or the "District"), KIRK T. KOLB ("Superintendent Kolb") and BARRET SALE ("Principal Sale," and collectively with Superintendent Kolb the "Supervisors").

## OBJECTIONS: BACKGROUND

Plaintiff concurs with the Court's findings of fact as set forth in the portion of the Proposed Order titled "Background."

## OBJECTIONS: LEGAL STANDARD

Plaintiff concurs with the Court's statements of law as set forth in the portion of the Proposed Order titled "Legal Standard."

## OBJECTIONS: DISCUSSION

Plaintiff objects to the Court's conclusions of law as set forth in the portion of the Proposed Order titled "Discussion" as follows:

## I. Plaintiff's § 1983 Claims Do Not Fail As a Matter of Law.

In evaluating motions for summary judgment, the Court is obligated to view the issues in the light most favorable to the nonmoving party. *Forro Precision, Inc. v. Intl. Bus. Machs. Corp.*, 745 F.2d 1283, 1285 (9th Cir. 1984). This means the Court must "resolve ***all*** reasonable inferences ***in favor of the nonmoving party***." *Ni-Q, LLC v. Prolacta Bioscience, Inc.*, 2021 U.S. Dist. LEXIS 138675 at *12 (D. Or. July 26, 2021) (emphasis added).

In this case, Plaintiff is the nonmoving party. The Court claims that it reviewed the contents of the letters that the Supervisors issued to Plaintiff concerning his off-campus exercise of his First Amendment freedoms of religion, speech, and assembly in the light most favorable to Plaintiff and found that "no reasonable juror could find that these letters constitute an adverse employment action." F&R at 7.

Plaintiff contends that the Court failed to resolve all reasonable inferences in his favor: The U.S Court of Appeals For the Ninth Circuit (the "Ninth Circuit") has

Pl.'s Objs. to Findings and Recommendation Granting Defs.' Mot. For Summary Judgm.

2

made clear that threats of penalties which "would lead ordinary [persons] in the plaintiffs' position[ ] to refrain from" exercising First Amendment-protected rights constitute adverse action for purposes of 42 U.S.C. § 1983. *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 771 (9th Cir. 2006). Plaintiff informed the Court of this rule in his brief opposing Defendants' motion for summary judgment. Pl.'s Opposition to Def.'s Mot. for Summary Judm. 1, 12 (Jan. 13, 2022) ("Opp.") [citing *Pinard*]. Plaintiff also pointed the Court to language in Superintendent Kolb's letter to Plaintiff repeatedly threatening Plaintiff with "dismissal on a first offense" or "reassignment." *Id.*; *see also* Decl. of Pl. Ryan Clark in Opposition to Defs.' Mot. for Summary Judm., Ex. "B" (Jan. 31, 2022) ("Clark Decl."). A reasonable juror could infer, as the Court should have, that threats of dismissal or reassignment "would chill a person of ordinary firmness from continuing to engage in … protected [First Amendment] activity." *Pinard*, 467 F.3d at 770.

The Court notes, correctly, that Superintendent Kolb's letter clarifying what conduct Plaintiff can and cannot engage in "repeatedly affirms that Plaintiff has rights to speech, assembly, and religion[.]" F&R at 7. However, viewed in the light most favorable to Plaintiff, Superintendent Kolb merely paid lip service to those rights before proceeding to chill his exercise of them – and Plaintiff told the Court so. Opp. at 34-35. A reasonable juror could infer that Superintendent Kolb was not just "informing [an] employee[] of what behaviors may violate rules and the possible consequences of such violations," as the Court asserts, but heavy-handedly restricting Plaintiff's constitutionally protected freedoms of religion, speech, and assembly. F&R at 7.

## A. Defendants' Interests in Student Safety and Wellbeing, and in Preventing Substantial Disruption, Do Not Outweigh Plaintiff's Right to Speak Freely on Matters of Public Concern.

First and foremost, as a preliminary matter, Fed. R. Civ. P. 56(a) makes clear, the Court shall only grant summary judgment if the movant proves that

Pl.'s Objs. to Findings and Recommendation Granting Defs.' Mot. For Summary Judgm.

3

"there is **_no_** dispute as to **_any_** material fact" (emphasis added).  In its Proposed Order, after declaring that "no reasonable juror could find that these letters constitute an adverse employment action," the Court switches gears and opens the ensuing paragraph by stating, "[E]ven if the letters at issue were to be considered adverse action …" F&R at 7.  Implicit in the latter statement is a tacit acknowledgement that whether the letters' threats of reassignment and/or dismissal constitute adverse action is a disputed issue of material fact – something Plaintiff pointed out to the Court.  Opp. at 12.  To grant summary judgment when disputes of material fact exist constitutes reversible error.  *Whitlock v. Pepsi Americas*, 2009 U.S. Dist. LEXIS 97476 (N.D. Cal. Oct. 21, 2009) [citing Fed. R. Civ. P. 56(c)].

      1. <u>Student Safety and Wellbeing</u>

The Court's Proposed Order makes no mention of the rule originally set forth in *Tinker v. Des Moines Indep. Sch. Dist.*, 393 U.S. 503, 506 (1969), and reaffirmed last year in *Mahanoy Area Sch. Dist. v. B.L.*, 141 S. Ct. 2038, 2048-49 fn. 1 (2021) (*B.L.*), that neither students nor teachers "students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."  As the Supreme Court has repeatedly held, "For the State in person of a school to justify prohibition of a particular expression of opinion, it must be able to show that is action was caused by **_something_** _**more** **than the mere desire to avoid**_ _**the discomfort and unpleasantness**_ that always accompany an unpopular viewpoint." *B.L.*, 141 S. Ct. at 2048 and fn. 1 [quoting *Tinker*, 393 U.S. at 509]. Indeed, the Supreme Court calls public schools "nurseries of democracy" and has declared that democracy only works if "unpopular ideas are protected.  *Id.* at 2046.  That includes speech concerning the "moral conduct of the United States and its citizens."  *Snyder v. Phelps*, 562 U.S. 443, 454 (2011).  Such speech "occupies the highest rung of the hierarchy of First Amendment values, **_and is_** _**entitled to special protection**_." *Id.* at 452 (emphasis added) [quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983)].

Pl.'s Objs. to Findings and Recommendation Granting Defs.' Mot. For Summary Judgm.

4

In asserting that the Constitution "does not afford Plaintiff the right to strike fear into the hearts of the children that he teaches, regardless of what he sincerely believes the Bible tells him to do" [F&R at 9], the Court mischaracterizes what Plaintiff seeks to accomplish: It would be one thing if Plaintiff was attacking his students personally or targeting them for harassment. However, that is not the case here, as Plaintiff has established a bond of mutual respect with at least one LGBT+ student. Clark Decl., ¶ 5. Plaintiff's off-campus religious speech is also not necessarily aimed at youth attending GPSD schools – he is merely speaking on matters of public concern to general audiences at off-campus public venues where some of his fellow teachers and students might see him. *Id.*, ¶ 7. Furthermore, in warning others of sin's consequences, he is calling on sinners to repent, as Christ once did. Matthew 9:13; Mark 2:17; Luke 5:32. Plaintiff passes no judgment on his listeners: He speaks about sin generally, not accusing anyone or making insinuations about anyone in his audience. Clark Decl., ¶ 5.

For the right of free speech to be meaningful, a speaker must have the opportunity to reach, and ultimately win over, his or her target audience. *Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 655 (1981). Defendants' actions here have unreasonably interfered with Plaintiff's ability to win over his target audience.

### 2. Substantial Disruption

The Court has seemingly ignored the rule that the Ninth Circuit reaffirmed last year in *Moser v. Las Vegas Metro. Police Dept.*, 984 F.3d 900 (9th Cir. 2021), that "bare assertions of future conflict are insufficient to carry the day at the summary judgment stage." *Id.* at 909 [quoting *Nichols v. Dancer*, 657 F.3d 929, 935 (9th Cir. 2011)]. Government employers cannot base adverse actions against employees "on mere speculation that an employee's speech will cause disruption." *Id.* [citing *Nicholas*, 657 F.3d at 933-34].

The Court attempts to justify its Proposed Order by asserting that "[c]ourts

Pl.'s Objs. to Findings and Recommendation Granting Defs.' Mot. For Summary Judgm.

5

are more likely to accept a government's prediction of future disruption if some disruption has already occurred."  F&R at 8 [citing *Munroe v. Cent. Bucks Cnty. Sch. Dist.*, 805 F.3d 454, 477-78 (3d Cir. 2015)].  While acknowledging in *Moser* that government employers are entitled to some deference concerning their efforts to prevent substantial disruptions to their work environment, the Ninth Circuit strongly cautioned against ratifying what amounts to a "heckler's veto" by chilling the employee's exercise of his First Amendment rights just to keep peace in the workplace.  *Moser*, 984 F.3d at 910 [citing *Lindsay v. City of Orrick*, 491 F.3d 892, 901 (8th Cir. 2007) ("The defendants provided evidence that the plaintiff's speech caused arguments and made people dislike him, but the court found that ***insufficient to grant summary judgment***") (emphasis added)].  Indeed, "[t]hreatened disruption by others reacting to public employee speech ***simply may not be allowed to serve as justification*** for public employer [adverse] action directed at that speech."  *Id.* at 909 (emphasis added) [quoting *Berger v. Battaglia*, 779 F.2d 992, 1001 (4th Cir. 1985)].

Here, the record contains no evidence that a disruption – substantial or otherwise – has occurred: The record only reflects that (1) two of Plaintiff's fellow teachers at South Middle School ("SMS"), who are also parents of GPSD students, raised concerns about Plaintiff's off-campus speech causing, or having potential to cause, on-campus disruption, and (2) two more teachers "do not feel safe being in the same room with him, or even working in the same building, because of the views he has expressed."  F&R at 2.  The District's assertion of its interest in preventing substantial disruptions raises the dark specter that if Plaintiff continues to engage in the First Amendment-protected activities that give rise to this case and one of his fellow SMS teachers or students happens to see him and hear speech to which the teacher or student takes offense, Plaintiff will, in fact, face discipline – even if that did not happen this time.

As stated *supra*, even for public employees, speech on matters of public

Pl.'s Objs. to Findings and Recommendation Granting Defs.' Mot. For Summary Judgm.

6

concern "occupies the highest rung of the hierarchy of First Amendment values, *and is entitled to special protection*." *Snyder*, 562 U.S. at 452 [quoting *Connick*, 461 U.S. at 145]. Accordingly, Plaintiff asks that the Court rewrite the Proposed Order and deny summary judgment to Defendants.

### B. The Court's Proposed Order Does Not Account For the Hostility That Defendants Showed Plaintiff's Religious Beliefs.

"The government, if it is to respect the Constitution's guarantee of free exercise, cannot impose regulations that are hostile to the religious beliefs of affected citizens and *cannot act in a manner that passes judgment upon . . . religious beliefs and practices*." *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1731 (2017) (*Masterpiece Cakeshop*) (emphasis added). Indeed, the First Amendment prohibits public schools and their officials from "establish[ing] a religion of secularism in the sense of *affirmatively opposing or showing hostility toward religion*, thus preferring those who believe in no religion" – or, for that matter, those whose religious beliefs are LGBTQ-affirming – "over those who do believe." *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 225 (1963) (*Schempp*) (emphasis added).

Here, GPSD, a government agency, passed judgment upon Plaintiff's religious beliefs and practices, labeling those beliefs and practices as "hateful," "intimidation," and "fear tactics." Clark Decl., Exs. "A"-"B." Principal Sale also wrote that "there are perceptions of [Plaintiff] that he may be an unsafe person." *Id.*, Ex. "A." To label Plaintiff as being potentially "unsafe," and to characterize his views as "hateful," not only stigmatized Plaintiff for holding, and being open about, his Christian beliefs, it ignores Justice Kennedy's words in *Obergefell v. Hodges*, 576 U.S. 644 (2015) – the case that made same-sex marriage legal nationwide – that "[m]any who deem same-sex marriage to be wrong reach that conclusion based on *decent and honorable religious and philosophical*

Pl.'s Objs. to Findings and Recommendation Granting Defs.' Mot. For Summary Judgm.

7

*premises*[.]" *Obergefell*, 576 U.S. at 672 (emphasis added).

On top of that, learning to live in a pluralistic society means learning to live with people whose religious and political views one disagrees with: As the Supreme Court declared last year, "America's public schools are the nurseries of democracy. The United States' representative democracy *only works if we protect the 'marketplace of ideas*.'" *B.L.*, 141 S. Ct. at 2046 (emphasis added). "That protection **must** *include the protection of unpopular ideas*" – even those expressed by teachers, and especially if their expression takes place off campus – because "[t]his free exchange facilitates an informed public opinion, which, when transmitted to lawmakers, helps produce law that reflects the People's will." *Id.* (emphasis added). Because Plaintiff's interest in working in a school environment that is not hostile to his beliefs not only outweighs Defendants' asserted interest in ensuring a safe learning environment, but is essential to that goal, the Court should deny Defendants' Motion as to Plaintiff's § 1983 claims. Plaintiff thus asks that the Court rewrite its Proposed Order and deny summary judgment to Defendants.

## II. <u>The Supervisors Are Not Entitled to Qualified Immunity – or, at the Very Least, a Jury Should Be Allowed to Decide Whether They Are.</u>

The Ninth Circuit made clear in *Martinez v. Stanford*, 323 F.3d 1178 (9th Cir. 2003), that where the degree to which defendants' conduct is "so clearly unlawful under the circumstances as to violate established law" is a disputed issue of fact, "summary judgment on that ground [is] inappropriate." *Id.* at 1184-85. *Martinez* is still valid law in this jurisdiction – it has not been overruled, not even by the U.S. Supreme Court's subsequent ruling in *Pearson v. Callahan*, 555 U.S. 223 (2009), in which the high court stated, "[W]e have repeatedly stressed the importance of resolving immunity issues at the earliest stage in the litigation." F&R at 13 [quoting *Pearson*, 555 U.S. at 232].

Pl.'s Objs. to Findings and Recommendation Granting Defs.' Mot. For Summary Judgm.

8

Here, as in *Martinez*, the exists a disputed issue of material fact: As Plaintiff pointed out in his brief opposing Defendants' motion for summary judgment, threats of penalties that "would lead ordinary [persons] in the plaintiffs' positions to refrain from" exercising First Amendment-protected rights constitute adverse action for purposes of 42 U.S.C. § 1983. *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 771 (9th Cir. 2006). Plaintiff argued that Superintendent Kolb flat-out threatened Plaintiff with "discipline, ***including dismissal on a first offense***," if he failed to follow Superintendent Kolb's directives restricting his exercise of his First Amendment-protected rights. Opp. at 12; Clark Decl., Ex. "B." Couple that with the stigma that Plaintiff's Supervisors placed on Plaintiff by essentially labeling him and the groups he associates with as hatemongers, fearmongers, and/or bullies – though not using those exact words – and there is no question that Supervisor Kolb's statement, made on behalf of GPSD, was "reasonably likely to deter" a person of ordinary firmness in Plaintiff's position "from engaging in protected activity." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1079 (9th Cir. 2013).

Whether Superintendent Kolb's statement constitutes a threat sufficient to rise to the level of adverse action for purposes of a § 1983 claim is an issue of disputed material fact. As the Court is well aware, pursuant to Fed. R. Civ. P. 56(a), the Court shall only grant summary judgment if the movant proves that "there is ___**no**___ dispute as to ___*any*___ material fact" (emphasis added). The phrases "no dispute" and "any material fact," viewed together, constitute an absolute: As stated *supra*, if there is even one dispute concerning any material fact, it is inappropriate for the Court to grant summary judgment. There are no exceptions to this rule.

Furthermore, the Court itself acknowledges that "[a] defendant is entitled to qualified immunity if his conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" F&R at 11 [quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)]. The record indicates

Pl.'s Objs. to Findings and Recommendation Granting Defs.' Mot. For Summary Judgm.

9

– and the Court even acknowledges – that Plaintiff's Supervisors did know about Plaintiff's right to proselytize, which is covered by both the First Amendment's Free Exercise Clause and the Free Speech Clause. *Id.* at 4 ["Defendant Kolb repeatedly answered that Plaintiff was not prohibited from exercising his first amendment (sic) rights"]. The Supervisors – Superintendent Kolb in particular – ***still*** attempted to chill Plaintiff's exercise of those rights anyway by threatening him with reassignment or dismissal "if [his] off-campus activities resulted in substantial disruption in the classroom." *Id.* Viewed in the light most favorable to Plaintiff, this is a very strong indicator that despite paying lip service to his First Amendment rights, the Supervisors proceeded to violate them, and if that is indeed the case, the Supervisors are to be stripped of their immunity and subjected to the consequences of their individual conduct. *Le Duyet Hung v. Washington*, 2006 U.S. Dist. LEXIS 1956 at **6-7 (D. Or. Jan. 6, 2006).

The Court has erred egregiously in imputing qualified immunity to the Supervisors for the sake of expedience. The Court should therefore rewrite the Proposed Order and deny summary judgment to Defendants.

## III. *Monell* Liability Exists Here.

"[T]he language of § 1983, read against the background of [the statute's] legislative history, compels the conclusion that Congress did not intend for" government agencies "to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dept. of Social Svs. of City of New York*, 436 U.S. 658, 691 (1978).

Here, Plaintiff can meet that standard: As the Court's Proposed Order indicates, Superintendent Kolb's clarification letter to Plaintiff flat-out states that "we direct Mr. Clark not to participate in posting hateful messages about individuals ***protected by district policies on discrimination***." F&R at 4. Principal

Sales findings said likewise.  Clark Decl., Ex. "A."  Never mind that GPSD is violating the First Amendment, as well as state law, by deeming Plaintiff's speech as hateful: "It is ***not***, as the U.S. Supreme Court has repeatedly held, ***the role of the State or its officials to prescribe what shall be offensive***."  *Masterpiece Cakeshop*, 138 S. Ct. at 1731 (emphasis added).  Defendants took action directed at Plaintiff here pursuant to GPSD policies aimed at protecting LGBT+ persons, and even said so.  F&R at 4.  That is sufficient to establish that Defendants took action pursuant to official policy and thereby caused a constitutional tort against Plaintiff.

It is inappropriate for government officials charged with the solemn responsibility of fair and neutral enforcement of anti-discrimination laws which "***protect against discrimination on the basis of religion as well as sexual orientation***" to label Plaintiff's conduct as "hateful," "fear tactics," and "intimidation," and to label Plaintiff as being potentially "unsafe," pursuant to District policies aimed at protecting LGBT+ students.  *Masterpiece Cakeshop*, 138 S. Ct. at 1729 (emphasis added).  That is the tort complained of here: Defendants not only aimed to chill Plaintiff's exercise of his constitutionally protected right to proselytize, but send a message of official disapproval of his views and thereby compel Plaintiff to "get with the program," so to speak, on LGBT+ issues.  The First Amendment allows neither.  *See Murdock v. Pennsylvania*, 319 U.S. 105, 109 (1943) [concerning the right to proselytize ("This form of religious activity occupies the same high estate under the First Amendment as do worship in the churches and preaching from the pulpits")] and *Schempp*, 374 U.S. at 225 [quoting *Engel v. Vitale*, 370 U.S. 421, 430-31 (1962) ("When the power, prestige and financial support of government is placed behind" – or against – "a particular religious belief, ***the indirect coercive pressure upon religious (individuals) to conform to the prevailing approved religion is plain***" (emphasis added))].

Accordingly, Plaintiff objects to the Court's Proposed Order and asks the Court to rewrite the Proposed Order to deny summary judgment to Defendants.

Pl.'s Objs. to Findings and Recommendation Granting Defs.' Mot. For Summary Judgm.

11

IV. **Defendants Should Not Be Awarded Summary Judgment as to All of Plaintiff's Claims Under the Oregon Constitution.**

Plaintiff raises no objection to the Court's findings concerning Plaintiff's claims under the Oregon Constitution, except as follows:

**A. Article I, § 2**

Article I, § 2 does not require that a law infringe on religious freedom – it merely declares that Oregonians shall be "secure in the Natural right, to worship Almighty God according to the dictates of their own consciences." Indeed, it was the intent of the drafters of Article I, §§ 2 and 3 that the State be unable to "assert compelling interests in order to discriminate" against practitioners of any particular faith. *Meltebeke v. Or. Bureau of Labor & Indus.*, 322 Or. 132, 147-48 (Or. 1995) (*Meltebeke II*). For Plaintiff, the right to worship God according to the dictates of his conscience, by definition, must include the right to publicly share the gospel, even if his views make some people uncomfortable: "Free and open expression about sexual orientation is ***clearly protected***" under the Oregon Constitution and "'***may not be punished*** in the interest of a uniform vision on how human sexuality should be regarded or portrayed.'" *Merrick v. Bd. of Higher Educ.*, 116 Or. App. 258, 264 (1992) [quoting *State v. Henry*, 322 Ore. 510, 525 (Or. 1987)].

The Court asserts that it "has found no caselaw that suggests that the Oregon Constitution would more aggressively protect free-speech or free-religion retaliation claims than the First Amendment." F&R at 16. If that is true, that merely means this is a case of first impression. However, Oregon's appellate courts have made clear that Article I, §§ 2 and 3 protect the freedoms of speech and religion in the employment context: In *Meltebeke II*, cited supra, the Oregon Supreme Court declared that it was the intent of the drafters of Article I, §§ 2 and 3 that government entities in Oregon be unable to "assert compelling interests in order to discriminate" against practitioners of any particular faith. *Meltebeke II*, 322 Or. at 147-48. And Oregon's Court of Appeals declared in *Meltebeke v. Or.*

Pl.'s Objs. to Findings and Recommendation Granting Defs.' Mot. For Summary Judgm.

12

*Bureau of Labor & Indus.*, 120 Or. App. 273 (Or. Ct. App. 1993) (*Meltebeke I*), that the Oregon Constitution's framers "would shudder if they were aware of [Defendants'] effort to erode the right to express religious opinions." *Id.* at 292.

Article I, §§ 2 and 3 are "obviously worded more broadly than the federal First Amendment, and are remarkable in the inclusiveness and adamancy with which rights of conscience ***are to be protected from government interference***." *Meltebeke II*, 322 Or. at 146 (emphasis added). Plaintiff cited both *Meltebeke I* and *Meltebeke II* in his opposition brief. *See* Opp. at 27, 29, 30. Plaintiff has thus presented at least some caselaw demonstrating that the Oregon Constitution protects him from retaliation for expressing his religious views to a greater degree than the First Amendment does. Accordingly, Plaintiff objects to the Court's Proposed Order and asks the Court to rewrite the Proposed Order to deny summary judgment to Defendants.

## B. Article I, § 8

The Ninth Circuit has made clear that Section 8 restricts the ability of Oregon's school districts to impose content- or viewpoint-based restrictions on speech. *Eagle Point Educ. Assn./SOBC/OEA v. Jackson Cnty. Sch. Dist. No. 9*, 880 F.3d 1097, 1108-09 (9th Cir. 2018). Furthermore, contrary to the Court's assertion [F&R at 15], a law need not be involved: *Karuk Tribe v. Tri-County Metro. Transp. Dist.*, 241 Or. App. 537 (Ore. Ct. App. 2011), involved a government-operated transportation system's advertising policy, which Oregon's Court of Appeals invalidated for violating § 8. *Karuk Tribe*, 241 Or. App. at 549. As illustrated *supra*, and in the Supervisors' communications with Plaintiff, there are policies at issue here – specifically, District policies aimed at protecting LGBT+ students. F&R at 4.

The Oregon Constitution's sweeping protections "extend[] to all forms of speech, ***regardless of the social acceptability or offensiveness of the content***."

Pl.'s Objs. to Findings and Recommendation Granting Defs.' Mot. For Summary Judgm.

13

*Merrick*, 116 Or. App. at 264 (emphasis added).  To attempt to silence Plaintiff for expressing his biblical views based on policies aimed at protecting LGBT+ students, as Defendants did here, is to engage in content- and viewpoint-based discrimination in violation of § 8.  *Karuk Tribe*, 241 Ore. App. at 545 [quoting *State v. Robertson*, 293 Or. 402, 412 (1982), which declares that § 8 prohibits government s from "enacting restrictions that focus on the content of speech, either because that content itself *is deemed socially undesirable or offensive*, or because it is *thought to have adverse consequences*" (emphasis added)].

The Court asserts that there is no private right of action for damages under the Oregon Constitution.  F&R at 16 [citing *Hunter v. City of Eugene*, 309 Or. 298, 304 (1990)].  However, the very case that the Court cites in support of this proposition, *Hunter*, notes an exception for equitable remedies, and Plaintiff is seeking injunctive relief here.  *Id.* at 304.  That alone is grounds not to dismiss Plaintiff's state constitutional claims.  The Court should thus reconsider its decision to grant summary judgment to Defendants on his Oregon constitutional law claims and rewrite its decision accordingly.

## V.   Defendants Should Not Be Awarded Summary Judgment on Plaintiff's Employment Law Claims.

### A. Plaintiff's Title VII Claim

To prove a religious discrimination claim under Title VII and ORS 659A.030, a plaintiff must show "*either* that similarly situated individuals outside [his] protected class were treated differently, *or* other circumstances surrounding the [alleged] adverse employment action" taken against the plaintiff "give rise to an inference of discrimination."  *Hedum v. Starbucks Corp.*, 546 F. Supp. 2d 1017, 1022 (D. Or. 2008) (emphasis in the original).

In this case, contrary to the Court's findings, Plaintiff was subject to an

Pl.'s Objs. to Findings and Recommendation Granting Defs.' Mot. For Summary Judgm.

14

adverse employment action: A public employer's investigation into an employee's exercise of his First Amendment rights, coupled with threats of discipline or termination, constitutes an adverse employment action for purposes of Title VII. *Santa Maria City Fire Fighters Union v. City of Santa Maria*, 2019 U.S. Dist. LEXIS 231709 at *21 (C.D. Cal. Dec. 2, 2019). Plaintiff can easily show both here. Clark Decl., Exs. "A"-"B."

The Court asserts that "Plaintiff has not shown that he was treated differently than other teachers in the District." F&R at 17. As stated *supra*, Plaintiff does not have to make such a showing: He can show that "other circumstances surrounding the adverse employment action" taken against the plaintiff "give rise to an inference of discrimination." *Hedum*, 546 F. Supp. 2d at 1022. Plaintiff can easily show that Defendants displayed hostility toward his religious beliefs by describing his speech as "hateful," "fear tactics," and "intimidation." Clark Decl., Exs. "A"-"B." As illustrated *supra*, viewing this case in the light most favorable to Plaintiff, the Court can easily infer that Defendants treat those who hold and/or express pro-LGBT+ viewpoint as "safe" – and that because they are "safe," Defendants allow them to speak freely in public about marriage, gender and sexuality without fear of losing their employment. Clark Decl., Exs., Ex. "A" [expressing concerns "there are perceptions of [Plaintiff] that he may be an unsafe person"]. This would easily meet the "inference of discrimination" standard.

Based on the foregoing, Plaintiff objects to the Court's Proposed Order and, accordingly, asks the Court to (1) reconsider its decision granting summary judgment to Defendants and rewrite its decision accordingly.

## B. Plaintiff's Oregon Employment Law Claims

Plaintiff raises no objection to the Court's findings concerning his state law

Pl.'s Objs. to Findings and Recommendation Granting Defs.' Mot. For Summary Judgm.

15

employment claims under ORS 659A.030(1)(b) – Oregon's equivalent of Title VII – or aiding and abetting.

## VI.  <u>Plaintiff's IIED Claim</u>

Plaintiff raises no objection to the Court's findings concerning his claim for intentional infliction of emotional distress.

## VII.  <u>Plaintiff's Claim For Injunctive Relief</u>

"The general rule is that a voluntary cessation of allegedly illegal conduct does not deprive the [court] of power to hear and determine the case, i.e., does no make the case moot." *Brach v. Newsom*, 6 F.4th 904, 918 (9th Cir 2021).  Thus, to establish mootness, Defendants "bear the heavy burden of demonstrating that there is ***<u>no reasonable expectation</u>*** that the wrong" inflicted on the plaintiffs "will be repeated." *Id.* (emphasis added).

In this case, Defendants assert that "a claim for injunctive relief is moot when the Plaintiff cannot reasonably expect be expected to benefit from relief ordered against a defendant."  MSJ at 16.  However, viewing the facts and evidence in the light most favorable to Plaintiff, Defendants cannot demonstrate that Plaintiff has no reasonable expectation that Defendants will not attempt to chill Plaintiff's free exercise of his constitutionally protected freedoms of religion, speech, and assembly in the future.  Injunctive relief would very much benefit Plaintiff in that regard, especially since Defendants have already sought to chill his exercise of his constitutionally protected freedoms once.

Defendants only withdrew their directives concerning Plaintiff's exercise of his constitutional rights in response to this lawsuit.  Clark Decl., Ex. "C."  Still, the withdrawal does not mean Defendants cannot and will not attempt to chill Plaintiff's exercise of his rights in the future: "Past wrongs [are] evidence bearing on whether there is a real and substantial threat of repeated injury." *City of Los*

Pl.'s Objs. to Findings and Recommendation Granting Defs.' Mot. For Summary Judgm.

16

*Angeles v. Lyons*, 461 U.S. 95, 102 (1983).  The withdrawal places Defendants'
actions squarely in the category of "capable of repetition, yet evading review."
*Brach*, 6 F.4th at 920.  It is for this reason that Plaintiff seeks to enjoin GPSD from
infringing on his constitutionally protected freedoms in the future.  There is
precedent for this: While not decided in an employment context, in *Gathright v.
City of Portland*, 439 F.3d 573 (2006), the Ninth Circuit declared that "First
Amendment jurisprudence is clear that ***the way to oppose offensive speech is by
more speech, not censorship [or] enforced silence***[.]"  *Id.* at 578.  Because of
that, the Ninth Circuit upheld a permanent injunction prohibiting the City of
Portland from ejecting evangelists from a public park.  Plaintiff seeks a similar
order here that would permanently enjoin GPSD from infringing on his
constitutionally protected freedoms of speech, religion, and assembly.

Based on the foregoing, the Court should reconsider its decision to grant
summary judgment to Defendants on his claim for injunctive relief.

## VIII.  Plaintiff's Damages Claims

### A. Non-Economic Damages For Emotional Distress

"Compensatory damages for emotional distress are necessarily vague and
***are generally considered a fact issue for the jury***[.]"  *Sandoval v. Las Vegas
Metro Police Dept.*, 2017 U.S. Dist. LEXIS 3381 at *9 (D. Nev. Jan. 10, 2017
(emphasis added) [quoting *Williams v. Trader Publishing Co.*, 218 F.3d 481, 486
n. 3 (5th Cir. 2000)].  Accordingly, such damages "may not be amenable to the kind
of calculation disclosure contemplated by" Fed. R. Civ. P. 26(a)(1)(C).  *Id.*
[quoting *Williams*, 218 F.3d at 486 n. 3]; *see also Jackson v. United Artists Theater
Circuit, Inc.*, 278 F.R.D. 586, 593 (D. Nev. 2011) [noting that computations of
general damages for pain and suffering "are subjective and do not lend themselves
to computation"].

Pl.'s Objs. to Findings and Recommendation Granting Defs.' Mot. For Summary Judgm.

17

In this case, the Court asserts that "Plaintiff alleges that Defendants' conduct caused him to be depressed, but he sought no medical treatment or counseling as a result of Defendants' conduct." F&R at 19.  Even granting that Plaintiff did not seek counseling or treatment, the law does not require that he do so.  *Painter v. Atwood*, 2014 U.S. Dist. LEXIS 153342 at *15 (D. Nev. Oct. 23, 2014).  Also, just because Plaintiff did not seek counseling or medical treatment for depression does not mean he did not experience depression.  This is especially true given that Defendants effectively stigmatized Plaintiff by labeling him "unsafe," calling his views "hateful" and "fear tactics," threatening to fire or reassign him if his views riled up GPSD students and staff.  Anyone faced with potential job loss or stigmatization is almost certain to experience depression and anxiety.

Based on the foregoing, Plaintiff has a colorable claim for "garden-variety" emotional distress damages – i.e., emotional distress that is "ordinary," "common place," "simple," or "usual."  *Roberts v. Clark Cnty. Sch. Dist.*, 312 F.R.D. 594 (D. Nev. 2016) [quoting *Fitzgerald v. Cassil*, 216 F.R.D. 632, 637 (N,D. Cal. 2003)]. Plaintiff can testify as to the emotional distress he experienced at trial and also have those closest to him testify as to the emotional distressed he experienced. Even without records of medical treatment or counseling, a jury should be given an opportunity to assign a dollar amount to the distress Plaintiff has suffered. Because granting Defendants' motion for summary judgment would deny Plaintiff that opportunity, the Court reconsider its decision granting summary judgment to Defendants and rewrite its decision to deny summary judgment.

### B. Punitive Damages Claims Against the Supervisors

Even if punitive damages cannot be awarded against GPSD, as Defendants assert, they can be awarded against Plaintiff's Supervisors in their individual capacities under § 1983.  *Henkle v. Gregory*, 150 F. Supp. 2d 1067, 1077 (D. Nev.

Pl.'s Objs. to Findings and Recommendation Granting Defs.' Mot. For Summary Judgm.

18

2001). This is especially true if the Supervisors can be stripped of their qualified immunity. *Le Duyet Hung*, 2006 U.S. Dist. LEXIS at *6.

As illustrated *supra*, viewing this case in the light most favorable to the nonmoving party, Plaintiff can show that the Supervisors paid lip service to his constitutional rights before attempting to chill his exercise of them with threats of reassignment or dismissal if his evangelism activities continued to rile up SMS staff. Clark Decl., Exs. "A"-"B." Plaintiff can thus show that the Supervisors subjected him to *"the deprivation of any rights, privileges, or immunities secured him by the Constitution and laws." *Le Duyet Hung*, 2006 U.S. Dist. LEXIS at *6. Because the Supervisors would be stripped of their immunity based on such a showing, the Court should reconsider its decision to grant summary judgment to Defendants and rewrite its decision accordingly.

## <u>CONCLUSION</u>

"[I]f the object of" a government entity's actions "is to infringe upon or restrict practices because of their religious motivation," then the government's actions demonstrate hostility toward religion and run afoul of both the federal and Oregon constitutions. *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 533 (1993). Even if Defendants took their actions with the arguably noble intent of protecting LGBTQ+ students, Defendants' actions "elevate[ ] one view of what is offensive over another … and send a signal of official disapproval of [Plaintiff's] religious beliefs." *Masterpiece Cakeshop*, 138 S. Ct. at 1731. This, neither the U.S. nor Oregon constitutions allow.

Defendants should be held accountable for the hostility they have displayed toward Plaintiff's beliefs. Accordingly, Plaintiff raises the foregoing objections to the Court's Proposed Order and asks the Court to rewrite its Proposed Order to deny summary judgment to Defendants on Plaintiff's claims under 42 U.S.C. § 1983, Title VII, and Or. Const. art. I, §§ 2 and 8.

Pl.'s Objs. to Findings and Recommendation Granting Defs.' Mot. For Summary Judgm.

19

Dated: May 19, 2022                      PACIFIC JUSTICE INSTITUTE

                                         __/s/ *RAY D. HACKE*_____
                                         Ray D. Hacke
                                         Attorneys for Plaintiff
                                         RYAN DOUGLAS CLARK

Pl.'s Objs. to Findings and Recommendation Granting Defs.' Mot. For Summary Judgm.

20

## CERTIFICATE OF COMPLIANCE WITH BRIEF LENGTH REQUIREMENTS

I hereby certify that (1) this brief complies with the word-count limitation set forth in Local Rules 7-2(b) (2) the word count of this brief is 10,989 words.

Dated:  May 19, 2022                    PACIFIC JUSTICE INSTITUTE
                                        _/s/ RAY D. HACKE_
                                        _____
                                        Ray D. Hacke
                                        OSB No. 173647
                                        Attorney for Plaintiff
                                        RYAN DOUGLAS CLARK

Pl.'s Objs. to Findings and Recommendation Granting Defs.' Mot. For Summary Judgm.

21

## PROOF OF SERVICE

I am employed in the County of Marion, State of Oregon. I am over the age of eighteen and not a party to the within action; my business address is 1850 45th Ave., Suite 33, Salem, OR 97305.

On or about May 19, 2022, I served the following documents on the interested parties by placing a true copy thereof enclosed in sealed envelope(s) addressed to said parties:

**OBJECTIONS TO FINDINGS AND RECOMMENDATION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## PLEASE SEE ATTACHED SERVICE LIST

_____BY MAIL: I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under that practice, it would be deposited with either the U.S. postal service or another carrier on approximately that same date with postage thereon fully prepaid at Salem, Oregon in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

_____BY PERSONAL SERVICE: I caused such envelope to be delivered by hand to the office of the addressee(s).

__X__BY ELECTRONIC MAIL: I caused such documents to be served on the interested parties via electronic mail.

_____(State) I declare under penalty of perjury under the laws of the State of Oregon that the above is true and correct.

__X__(Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 19, 2022, at Salem, Oregon.

*/s/ LAUREN PEFFERLE*_____
Lauren Pefferle

Pl.'s Objs. to Findings and Recommendation Granting Defs.' Mot. For Summary Judgm.

22

## <u>SERVICE LIST</u>

- Karen Vickers and Beth Plass
  Vickers Plass, LLC.
  5200 SW Meadows Road, Suite 150
  Lake Oswego, OR 97035
  Attorneys for Defendants
  E-mail: kvickers@vickersplass.com
          bplass@vickersplass.com

Pl.'s Objs. to Findings and Recommendation Granting Defs.' Mot. For Summary Judgm.

23